IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DONNA MAY TILSON,
     Plaintiff,

vs.                        Case No.: 1:18cv210/AW/EMT

ANDREW SAUL,
Commissioner of Social Security,[1]
     Defendant.
_____/

## ORDER, REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019.  Pursuant to Fed. R. Civ. P. 25(d), he is therefore automatically substituted for Nancy A. Berryhill as the Defendant in this case.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## I.    PROCEDURAL HISTORY

On October 19, 2011, Plaintiff filed an application for DIB, alleging disability beginning July 1, 2010 (tr. 25).[2]    Her application was denied initially and on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ").    An initial hearing was held on August 16, 2013, and on September 25, 2013, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through December 31, 2012, the date Plaintiff was last insured for DIB purposes (tr. 25–31).    Plaintiff appealed, and this court remanded the ALJ's decision for further administrative proceedings (tr. 336–38).    A new hearing was held on December 15, 2017, and on March 7, 2018, the ALJ again issued a decision finding Plaintiff "not disabled" at any time through the date last insured (tr. 274–83).    Plaintiff's representative submitted additional

---

[2] All references to "tr." refer to the transcript of the Social Security Administration record filed on February 8, 2019 (ECF No. 12) and February 11, 2019 (ECF No. 14).    Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

evidence on March 9, 2018, and the ALJ reopened her decision to address this evidence (tr. 680).   On June 11, 2018, the ALJ issued her third and final decision, again finding Plaintiff "not disabled" at any time through the date last insured (tr. 680–90).   The Appeals Council subsequently denied Plaintiff's request for review (tr. 332).   Thus, this third decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.   *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007).   This appeal followed.

## II.    FINDINGS OF THE ALJ

In her (third) written decision of June 11, 2018, the ALJ made several findings relative to the issues raised in this appeal (tr. 680–90):

1) Plaintiff last met the insured status requirements of the Act on December 31, 2012[3];

2) Plaintiff did not engage in substantial gainful activity during the relevant period;

3) Plaintiff had two severe impairments: disorders of the spine and osteoarthritis;

4) Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

---

[3] Thus, the time frame relevant to this appeal is July 1, 2010 (alleged onset) to December 31, 2012 (date last insured).

5)    Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with no more than occasional crawling, climbing ramps/stairs, balancing, stooping, kneeling, or crouching; no climbing of ladders, ropes, or scaffolds; and no concentrated exposure to extreme cold;

6)    Plaintiff was able to perform her past relevant work as a claims processor and claims supervisor, as these sedentary jobs did not require her to perform work-related activities precluded by her RFC; and

7)    Plaintiff was not under a disability, as defined in the Act, at any time during the relevant period.

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence.   42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); *Lewis*, 125 F.3d at 1439; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal marks omitted); *Lewis*, 125 F.3d at 1439.   The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.   *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).   Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.   *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering

[her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."   42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, she is not disabled.

2.    If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.    If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.    Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.   20 C.F.R. § 404.1512.   If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.   *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).   If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   PLAINTIFF'S PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY

   A.   Personal and Employment History

At the time of her first hearing in August 2013, Plaintiff was 52 years of age, stood around 5'7'' tall, and weighed 124 pounds (tr. 41–43).   She testified that she graduated from high school and later completed a home course in medical coding and billing (tr. 41–42).   She previously worked for several insurance companies as a claims processor until 2007 when she was let go for making a mistake on a large claim (tr. 185, 47).

With respect to symptoms and functional limitations, Plaintiff testified that since June 2009 she had to use a cane "at least a few times a month" due to pain (tr. 43).   She was able to do chores around the house in moderation for about thirty

minutes (including caring for peacocks and emus, painting, cutting grass, and raking) before a flare-up in her back occurred (tr. 49, 50). She could sit between thirty to forty-five minutes but then had to walk for at least ten minutes (tr. 54). She reported shooting pain and numbness in her back, popping in her left shoulder, and shaking and reduced strength in her right hand which caused her to drop things (tr. 54–55). She claimed she could not lift more than five or ten pounds (tr. 58). She had four "bad days" during the week, including two days per week where she could not get out of bed due to pain (*id*.). She used a heating pad for pain relief four times per day and periodically used a TENS unit (tr. 57). Her medication only "t[ook] the edge off" her pain (tr. 59). Plaintiff claimed she could not work in a data-entry position due to pain and her need to shift between sitting and standing (tr. 52). Plaintiff testified that she still smoked, despite her doctor's recommendations that she quit, and she occasionally consumed beer (tr. 53).[4]

B.    Relevant Medical History

Evidence that Pre-dates the Relevant Period

---

[4] An additional hearing was held on December 2017, but this hearing consisted almost entirely of testimony as to Plaintiff's work history and the opinions and determinations of the vocational expert. As such, no relevant evidence regarding Plaintiff's symptoms/limitations was elicited.

On June 2, 2009, Plaintiff fell from a ten-foot ladder (tr. 231). She reported "severe" back pain and was transported to an emergency room (*id*.). Steven Bailey, M.D., assessed L1 burst fracture and left ankle strain, secondary to the fall, as well as tobacco abuse (*id*.). A computed tomography ("CT") scan also revealed mild degenerative spondylosis at L5-S1 (tr. 247). Plaintiff was fitted for a thoracic lumbar sacral orthosis brace and evaluated for physical therapy (tr. 236). As of June 22, her back pain appeared to have "diminished" (tr. 265). By July 27, she was still wearing her back brace but seemed "quite active" according to Dr. Bailey (tr. 266). Plaintiff then saw Dr. Bailey about once a month for the next six months. She continued to report back pain which was treated with prescription medications (Percocet and Flexeril) and a TENS unit (tr. 267–70). In September 2009, Dr. Bailey advised Plaintiff to stop using the back brace and begin strengthening exercises (tr. 268). Plaintiff was able to do yard work despite her complaints (tr. 269), and she enrolled in school for medical coding and billing (tr. 270).

An imaging study from July 27, 2009, revealed a suspect traumatic 50 percent superior endplate grade II wedge fracture within L1, with mild kyphosis; minimal canal stenosis from the posterior bulge; mild lower lumbar degenerative disc disease; and facet arthropathy (tr. 263).

Evidence from the Relevant Period (July 1, 2010 to December 31, 2012)

A January 2012 imaging study of the lumbar spine revealed an L1 vertebral body fracture that was "unchanged" when compared with the June 2009 view, as well as mild degenerative spondylosis at L5-S1 (tr. 247).

Plaintiff returned to Dr. Bailey on April 27, 2012, more than two years after she had last seen him, claiming she had experienced "ongoing pain but 'did not have insurance'" (tr. 257). She reported the pain was "worsening" and "run[ing] into the right leg" (*id*.). Dr. Bailey observed Plaintiff to walk with a limp and with "give way weakness of dorsiflexion and hip flexor testing due to pain" (*id*.). He prescribed Percocet and Flexeril, recommended smoking cessation, and referred Plaintiff to vocational rehabilitation to complete imaging studies on her back, although Plaintiff claimed she could not afford the studies because she still did not have insurance (*id*.).

Evidence that Post-dates the Relevant Period

A CT scan of the lumbar spine from March 22, 2013, revealed an old healed L1 compression fracture with some progressive collapse, mild retropulsion along the superior margin, mild to moderate degenerative disc disease, and an L4-L5 bulge with underlying mild to moderate central stenosis (tr. 539).

Plaintiff presented to Dr. Bailey on March 28, 2013, one week after being treated at an emergency room for a slip-and-fall accident (tr. 254). Dr. Bailey found

pain and decreased range of motion ("ROM") in Plaintiff's shoulders (tr. 255). Plaintiff had no abnormalities of the cervical spine, and her straight leg test was negative; however, her thoracic spine exhibited tenderness on palpation, spasms, and mild kyphosis, and her lumbar spine exhibited tenderness on palpation and pain with motion (*id*.).   Plaintiff also had pain with lower extremity testing, but her strength was normal in her extremities and hips (tr. 255–56).   Dr. Bailey observed that Plaintiff limped on the right (tr. 256).   He felt he had nothing more to recommend to Plaintiff from a neurological standpoint but did counsel her on smoking cessation and gave her information regarding health clinics, Medicaid, and vocational rehabilitation to continue treatment (*id*.).

Plaintiff presented to Dr. Bailey for follow-up on July 25, 2013 (tr. 252).   She reported pain in her central thoracic spine, upper lumbar spine, neck, knee, and ankle, and she stated that the pain radiated to her legs intermittently (*id*.).   She requested refills for Percocet and Flexeril (*id*.).   Dr. Bailey noted that Plaintiff ambulated slowly with a "flexed posture" and that her ROM was "restricted in all planes" (tr. 253).   Dr. Bailey did not believe Plaintiff could maintain gainful employment at that time (*id*.).

C.      Other Information Within Plaintiff's Claim File

On January 12, 2012, Robert Greenberg, M.D., conducted a consultative examination of Plaintiff at the request of Disability Determination Services (tr. 249). Plaintiff reported constant low back pain which radiated into her right leg, weakness in her right leg, difficulty bending and lifting, and an inability to sit longer than one and a half to two hours at a time (*id.*). She reported taking ibuprofen with little relief (*id.*). Dr. Greenberg noted pain on ROM and decreased ROM in the cervical spine, lumbar spine, right hip, and right shoulder (*id.*). He observed that Plaintiff walked with a mild, right-leg limp but did not use an assistive device (tr. 250). She had difficulty tandem walking, walking on her heels and toes, and stooping (*id.*). She was positive for the straight leg test at 30 degrees and had decreased right grip strength and right arm strength, measuring at "4/5" (*id.*). Dr. Greenberg assessed osteoarthritis of the cervical and lumbar spine, right shoulder, and right hip (*id.*).

Dr. Bailey completed a medical source statement in July 2013 (tr. 258). He noted that Plaintiff's treatment consisted of narcotic pain relief only and that she did not require an assistive device (tr. 258, 260). He stated Plaintiff could sit for forty-five minutes and stand for thirty minutes and would need five to ten-minute periods of walking every half-hour during a workday (tr. 259). He stated she would have limitations in carrying and lifting, could rarely twist, stoop, or crouch, and could never climb stairs or ladders (tr. 260). He felt she would only be able to grasp, turn,

and twist objects with her hands for 20 percent of the day, and she would have significant limitations with reaching, handling, or fingering in her right hand (*id*.). He noted she was "capable of low stress work" but that she would be absent more than four days per month (tr. 261). Dr. Bailey did not indicate an onset date for the aforementioned symptoms in the space provided (*id*.). However, in March 2018, Dr. Bailey submitted an "amended" medical source statement and indicated that the "onset of symptoms" began in June 2009 (tr. 676).

Robert Strader, a vocational expert ("VE"), testified at Plaintiff's second hearing (tr. 304–15, 511). He classified Plaintiff's past work as a claims processor and claims supervisor as sedentary (tr. 305). He opined that Plaintiff could perform all of her past work given her RFC, which restricted her to sedentary work with postural and environmental limitations, even if she required a handheld assistive device for walking and needed to stand and stretch every two hours (tr. 310). However, if a hypothetical person with Plaintiff's RFC would be off-task twenty percent of the time or could sit for only "two hours and stand and walk for two hours," this person would be unemployable (tr. 314–15).

V.    DISCUSSION

Plaintiff clearly identifies two grounds for relief in her memorandum: (1) the ALJ erred in assigning no significant weight to the "RFC opinions" of Dr. Bailey, a

treating physician (ECF No. 17 at 17); and (2) the ALJ erred in discrediting Plaintiff's subjective complaints of pain and other symptoms (*id*. at 23).  To the extent Plaintiff has tangentially or generally raised additional grounds, buried within the clearly-identified grounds noted herein, this court need not and will not consider them.[5]

### A.   Opinions of Treating Physician Dr. Bailey

Plaintiff contends the ALJ erred in rejected the "RFC opinions" of Dr. Bailey—presumably referring to opinions contained in the medical source statement completed by Dr. Bailey in July 2013 (tr. 258–61) and supplemented in March 2018

---

5 On February 8, 2019, the undersigned issued a scheduling order in this case (ECF No. 13).   The order directed each party to file a brief that set forth the basis for its position and included a "detailed analysis of the administrative record, *with citation . . . to the administrative record*) (*id*. at 1, latter emphasis added)).   The parties were warned that failure to file a brief "which specifically addresses the claimed error shall be deemed a failure to prosecute and will result in a dismissal of this case with prejudice." (*id*. at 2) (emphasis in original).   The order contained additional warnings, to include: (1) "The memorandum shall set forth Plaintiff's legal contentions and shall specifically cite the record by page number for factual contentions."; and (2) "Failure by either party to support factual contentions with accurate, precise citations to the record will result in the contention(s) being disregarded for lack of proper development." (*id*. at 2–3) (emphases in original).   Notwithstanding these clear directives, Plaintiff filed a 29-page ("corrected") memorandum that contains no citations to the medical record (*see* ECF No. 17 at 13–29) and, as noted, includes what appear to be a few sub-claims scattered within the main claims which are neither developed to any extent nor supported by citations to the record.   Although the court could disregard *all* of Plaintiff's contentions in this case, or otherwise dismiss it due to Plaintiff's clear failure to comply with the terms of the scheduling order, in the interest of fairness to the represented Plaintiff in this case, the court has instead combed through the record itself in order to address the two claims clearly identified by Plaintiff's counsel.

Case No.: 1:18cv210/AW/EMT

(tr. 676)—maintaining the ALJ failed to provide adequate reasons for assigning "no significant weight" to those opinions.

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1439–41 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(c). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.

1987).   When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c).   Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion.   *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527 (c)(2).

Here, the ALJ discussed Dr. Bailey's records extensively (*see* tr. 684–89) and then articulated numerous reasons for discounting Dr. Bailey's opinions.   The ALJ emphasized that Plaintiff barely saw Dr. Bailey during the relevant period (*see id.*). To be sure, as set forth above, Plaintiff saw Dr. Bailey fairly regularly *prior to* the relevant period (i.e., in relation to her fall from the ladder, from approximately June through September 2009 or January 2010), but she saw him only once during the relevant period, in April 2012, which was nearly two years after the relevant period commenced.

The ALJ then noted that the opinions at issue were rendered in July 2013, after the relevant period (and supplemented in March 2018), and that the original opinions

did not relate back to the relevant period (tr. 687). As for the supplemental opinion—which "clarifies" that the limitations assessed by Dr. Bailey nearly five years earlier in 2013, in actuality had existed since 2009—the ALJ found that it was based primarily on Plaintiff's subjective reports of her symptoms as opposed to objective medical findings that could reasonably result in the assessed limitations (tr. 688).

More importantly, the ALJ noted that Dr. Bailey's treatment records from 2009 and 2010 contain no work-related limitations or any significant objective findings (tr. 688), such as those he included in the medical source statement. The ALJ also pointed out: (1) that Dr. Bailey referred Plaintiff to vocational rehabilitation during and after the relevant period, evidencing his belief that she was employable at that time (tr. 686); (2) that Plaintiff failed to seek treatment from Dr. Bailey from January 2010 until April 2012 (tr. 685); and (3) that Dr. Bailey's treatment notes from April 2012 reflect that Plaintiff was doing "reasonably well" (*id.*).

Continuing, the ALJ considered that Plaintiff's slip-and-fall accident (and related emergency room treatment) occurred just *one week prior* to her March 2013 visit with Dr. Bailey (tr. 686) and prior to the date Dr. Bailey completed the original medical source statement in July 2013. More specifically, the ALJ stated that the

slip-and-fall caused Plaintiff to "suffer[] an additional injury" roughly three months *after* the relevant period ended but just before Dr. Bailey examined her in March 2013 (tr. 687).   Even at this examination, however, Dr. Bailey found "no significant abnormalities" as to her cervical spine and noted that while Plaintiff had tenderness to palpation, her straight leg raises were negative, she had normal motor strength, and he again referred her to vocational rehabilitation (tr. 254–56).   Lastly, the ALJ noted that while Plaintiff's medical records contained reports of chronic pain and limitations with walking, these conditions were adequately considered and accounted for in the RFC's limitation to sedentary work.

In conclusion, because the ALJ articulated the inconsistencies on which she relied in discrediting Dr. Bailey's opinions, and because the ALJ's reasons are supported by substantial evidence in the record as a whole, the ALJ committed no error.   Indeed, as the district court noted previously in remanding this case for further administrative proceedings, "The ALJ [does not have] to accept or reject Dr. Bailey's . . . analysis.   However, on remand, the ALJ does have to explain why [she] discounted Dr. Bailey's opinion . . . ."   *See Tilson*, Case No. 1:15cv103/MMP/GRJ, Order (N.D. Fla. Sept. 9, 2016).   The ALJ complied with this directive and fully explained the basis for her decision to discount the opinions at issue.

B.     Plaintiff's Subjective Complaints of Pain

When a claimant attempts to establish disability through her own testimony about pain or other subjective symptoms, a two-part "pain standard" applies. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard requires "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise" to the claimed symptoms. *Id.* at 1225; *see also* 20 C.F.R. § 404.1529(a)–(b).

If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's pain or other symptoms, then the ALJ evaluates the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(b)–(c). *See also* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016) (eliminating use of the term "credibility" in the sub-regulatory policy and stressing that an ALJ should "not assess an individual's overall character or truthfulness" but instead should "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms . . ." and "whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities"); *Harris v. Berryhill*, No. 5:16-cv-01050-MHH, 2017 WL 4222611, at *3 n.2 (N.D. Ala. Sept. 22, 2017) ("SSR 16-3p provides clarification of

the subjective pain standard; it does not substantively change the standard."); *Griffin v. Berryhill*, No. 4:15-cv-0974-JEO, 2017 WL 1164889, at *6 n.10 (N.D. Ala. March 29, 2017) ("The Eleventh Circuit's pain standard is consistent with the parameters that SSR 16-3p set forth.").

An ALJ must "articulate explicit and adequate reasons" for discrediting a claimant's allegations of disabling symptoms. *Foote*, 67 F.3d at 1561–62. "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." *Id.*, at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983)). The ALJ's determination does not need to cite "'particular phrases or formulations,'" but it cannot merely be a broad rejection of a claimant's allegations which is "'not enough to enable [the court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Id.*, at 1561 (quoting *Jamison v. Bowen*, 814 F.2d 585, 588–90 (11th Cir. 1987)); *see also Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005) (same).

Here, the ALJ generally concluded that while Plaintiff's impairments would reasonably be expected to cause the alleged symptoms, her allegations regarding the intensity, persistence, and limiting effects of these symptoms were not consistent with the record (tr. 684). In support, the ALJ considered that Plaintiff's treatment was conservative, consisting mostly of pain medication, and sporadic, in that

Plaintiff failed to seek any treatment whatsoever from January 2010 to April 2012 (tr. 685). *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (ALJ may properly consider treatment that is "entirely conservative in nature" in discrediting a claimant's testimony); *Miller v. Astrue*, No. 8:07cv2074, 2009 WL 35167, at *5 (M.D. Fla. Jan. 6, 2009) (same); *Woodum v. Astrue*, No. 8:07cv404, 2008 WL 759310, at *3 (M.D. Fla. Mar. 20, 2008) (ALJ properly considered that "limited and conservative treatment . . . is inconsistent with the medical response that would be expected if the physician(s) found the symptoms and limitations to be as severe as reported by the claimant"). The ALJ also considered that Plaintiff's providers placed no significant restrictions on her activity during the relevant period. *See, e.g., Choate v. Barnhart*, 457 F.3d 865, 870 (8th Cir. 2006) ("There is no indication in the treatment notes that [] any of [the claimant's] doctors restricted his activities, or advised him to avoid prolonged standing or sitting."); *Singleton v. Astrue*, 542 F. Supp. 2d 367, 379 (D. Del. 2008) (in evaluating a plaintiff's credibility, ALJ did not err in considering, among other factors, that "none of [p]laintiff's treating physicians identified any specific functional limitations arising from her fibromyalgia or other conditions that would render her totally disabled," and plaintiff received only conservative, routine, care).

Additionally, the ALJ found that the more extreme of Plaintiff's subjective complaints were not supported by the objective medical findings, the nature of her of treatment, or Plaintiff's level of functioning.   In support, the ALJ first discussed Plaintiff's medical history in great detail and then cited specific findings at odds with her complaints (tr. 684–89).   For example, the ALJ noted that Plaintiff was advised to discontinue use of her back brace and perform strengthening exercises in September 2009, suggesting an improvement in her condition (tr. 268); that Plaintiff was in school for medical coding and billing in January 2010 (tr. 270); that Dr. Greenberg found no evidence of active or inflammatory arthritis at a January 2012 examination (tr. 249); and that Plaintiff was able to ambulate unassisted even though she walked with a limp (tr. 250).   The ALJ also pointed to the the lack of any significant objective medical evidence immediately preceding and during the relevant period which supports Plaintiff's alleged limitations (tr. 684).   To the contrary, a January 2012 image of her lumber spine revealed only the "unchanged" L1 fracture and mild degenerative spondylosis (tr. 247).

Plaintiff does not point to any specific medical records in support of her contention that the ALJ erred in evaluating her subjective complaints or argue that the ALJ overlooked any pertinent records as part of this evaluation.   *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (claimant bears the burden on

proving disability and, consequently, is responsible for producing evidence to support claim). Instead, she merely complains that the ALJ used "boilerplate" language in her decision, and she relies on *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), in support of her argument that reversible error occurred. Even if *Bjornson* were controlling, it is distinguishable.

In *Bjornson*, the Seventh Circuit found that the use of boilerplate language is improper when it "fails to inform [the court] in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible." *Bjornson*, 671 F.3d at 645. Here, the ALJ recited the applicable standard taken from *Wilson* (i.e., that a claimant must show that the "objectively determined medical condition can reasonably be expected to give rise to the claimed pain"), but she went on to articulate specific inconsistencies between Plaintiff's complaints and the other evidence of record. *Wilson*, 284 F.3d at 1225. Thus, unlike in *Bjornson*, here the ALJ set forth her analysis of the evidence, thereby permitting this court to track her reasoning and consider whether the specific evidence she identified supports the conclusions she drew. As discussed above, it does, and there is no error.

VI.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.   42 U.S.C. § 405(g); *Lewis*, 125 F. 3d at 1439; *Foote*, 67 F.3d at1560.   Furthermore, Plaintiff has not shown that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED**:

The clerk of court is directed to substitute Andrew Saul for Nancy A. Berryhill as Defendant.

And it is respectfully **RECOMMENDED**:

1.    That the decision of the Commissioner be **AFFIRMED**, and this action be **DISMISSED**.

2.    That **JUDGMENT** be entered, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the decision of the Commissioner.

3.    That the Clerk be directed to close the file.

At Pensacola, Florida this 1st day of November 2019.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.